**In re the NUTTALL EQUIPMENT CO., INC., Debtor.**

**Mark S. WALLACH, Trustee, Plaintiff,**

v.

**FRINK AMERICA, INC., Defendant.**

**Bankruptcy No. 93–12532 K.**
**Adv. No. 94–1190 K.**

United States Bankruptcy Court,
W.D. New York.

Oct. 13, 1995.

Mark S. Wallach, Penney, Maier, Wallach & Crowe, Buffalo, New York, for Plaintiff.

Dale B. Johnson, Menter, Rudin & Trivelpiece, P.C., Syracuse, New York, for Defendant.

MICHAEL J. KAPLAN, Bankruptcy Judge.

There is abundant authority to the effect that prepetition claims against a corporate Chapter 11 debtor are not discharged under 11 U.S.C. § 1141(d)(1) if the debtor knew of the claim and did not schedule the creditor and if the creditor, therefore, never received the notices required by statute. It further appears that this rule appertains even if the unscheduled creditor was aware of the bankruptcy.[1] This rule largely flows from considerations of due process of law.

■■■ But what if the Chapter 11 debtor-in-possession does not know of the creditor's claim? And does it make any difference whether this unknown claim is a pre-petition claim or a post-petition, pre-confirmation claim? This Court concludes that a Chapter 11 corporate debtor-in-possession is charged with knowledge of the obligations it has incurred as an ordinary cost of doing business, whether those obligations were incurred pre-petition or post-petition. The Court further holds that the claim of an obligee who did not receive notice of such critical events as a claims bar (or in this case an "administrative claims bar") or a notice of the hearing on confirmation of a Chapter 11 plan, is not discharged under § 1141; said claim remains payable when due. Finally, this Court holds that a corporate debtor-in-possession's liability for receipt of preferential payments recoverable from it under § 547 in another bankruptcy case is such an ordinary cost of doing business.

1. See, for example, the line of authority set forth in the case of *In re Turning Point Lounge, Ltd.,* 111 B.R. 44, 47 (Bankr.W.D.N.Y.1990). And see *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*

## BACKGROUND

The parties' stipulation of facts is appended hereto as an exhibit. In sum, the facts are these: Frink America, Inc. ("Frink") filed its Chapter 11 case in the Northern District of New York in June of 1992. It had an ongoing business relationship with the Nuttall Equipment Co., Inc. ("Nuttall"). Nuttall filed a Chapter 11 petition here in the Western District of New York on August 20, 1993. During the ninety days immediately prior to that date, Nuttall made $22,000 in payments to Frink that are stipulated to constitute preferential payments under § 547(b). On November 3, 1993, Frink obtained an order confirming its plan of reorganization, under which Frink continues to operate its reorganized business.

It is stipulated that if it is necessary to determine whether or when Nuttall became aware of the fact that Frink was a Chapter 11 debtor, an evidentiary hearing would be required.

On or about May 17, 1994, while Nuttall was still a debtor-in-possession, its counsel made formal demand for the return of $22,000 in preferential payments. On or about June 29, 1994, Nuttall converted its case to Chapter 7. On September 19, 1994, the Chapter 7 Trustee made demand for return of the preferential payments, and he commenced the present Adversary Proceeding on October 20, 1994.

At no time was Nuttall listed or scheduled as a creditor in the Frink bankruptcy case, and there is no evidence that Frink was aware that Nuttall was in bankruptcy prior to the time that its counsel made demand against Frink by letter of May 17, 1994.

## ISSUE

The question presented is whether Frink's liability for preferential payments it received in May, June and August of 1993 was discharged by the November 3, 1993 Confirmation Order, in light of the fact that § 1141(d)(1) provides that:

*Partnership,* 507 U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), to the effect that inadequate notice is grounds for allowance of a late-filed claims in a Chapter 11 case.

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

 (A) discharges the debtor from any debt that arose before the date of such confirmation ..., whether or not—

 (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

 (ii) such claim is allowed under section 502 of this title; or

 (iii) the holder of such claim has accepted the claim....

Discharge was raised in Frink's Answer as an affirmative defense. Able counsel on both sides, having immediately recognized the uniqueness of the question, agreed to submit the matter on stipulated facts, reserving, however, the right to an evidentiary hearing should the Court decide that the matter does not turn exclusively upon the issue of law presented.

■ Upon receipt of the stipulated facts, the Court ordered briefing on the question of whether the preference liability in this case was a pre-confirmation "debt" or a post-confirmation "debt" for purposes of § 1141(d), since post-confirmation "debts" are liabilities of the reorganized debtor and are not affected at all by the plan or the order confirming the plan.

The parties' initial briefs agreed that such liability was a pre-confirmation "debt," and the Court ordered additional briefs to address the implications. The Nuttall Trustee argues that the preference obligation was an administrative expense in the Frink case and that it must be paid. Frink's counsel argues that because Nuttall failed to assert the preference claim promptly upon Nuttall's filing of

its Chapter 11 petition and before confirmation of the Frink plan to notify Frink of the existence of its claim, Nuttall waived participation in the Frink case, and whatever "claim" it had was discharged by § 1141(d) when the confirmation order was entered.

### DISCUSSION

Counsel for both sides have cogently set forth the arguments, and each counsel is correct in several regards.

■ Certainly, as asserted by Frink, a "claim" is a "claim" when it first meets the definition of that term as contained in § 101(5), and not at some later point when the claimant elects to assert it. Thus, the preference claim became a "claim" for § 101(5) purposes when Nuttall filed its Chapter 11 petition—an event that occurred prior to confirmation of the Frink plan. It was at the time of the filing of the Nuttall petition that a cause of action accrued under § 547. The fact that pre-judgment interest does not accrue on a preference claim until some later point in time (generally thought to be the date of demand for return of the preference, although some courts may believe that it is the date of the filing of the preference complaint that commences the running of pre-judgment interest) is irrelevant. The "right to payment" that § 101(5)(A) says constitutes a "claim" exists once the transferor of the preferential payment has filed a petition under the Bankruptcy Code.

■ But just as clearly, one may not be cut off from asserting a right without notice. Many courts have relied upon due process considerations in reaching that conclusion with regard to claims of pre-petition creditors.[2] There is no reason that a post-petition

---

2. The case most often relied upon by other courts for this proposition is the Supreme Court's ruling in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Although referring to the Due Process Clause of the Fourteenth Amendment, rather than that of the Fifth Amendment, as would apply here, the Court described the fundamental concern as follows:

 Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a

minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

*Id.* at 313–14.

 This doctrine has been applied by numerous bankruptcy courts in decisions refining what the rights are of creditors who were not given proper notice of the bankruptcy proceedings, whether the lack of notice was the debtor's fault or not. In the case of *In re Interstate Cigar Co.,* 150 B.R. 305 (Bankr.E.D.N.Y.1993), the issue was wheth-

creditor should be worse-off. But resort to constitutional considerations is not required in this case.

■ The plain language of § 1141(d) would produce a logical absurdity if not read in *para materia* with provisions of the Bankruptcy Code that implicitly recognize that certain allowable administrative expenses that are not specifically contemplated by the plan or by the order confirming the plan survive confirmation and are to be paid in the ordinary course.

■ Specifically, § 1129(a)(9)(A) requires that certain administrative claims be paid in cash, in full on the effective date of the plan, unless some other arrangements are made with the holder of that claim. But that provision only applies to claims "of a kind specified in section 507(a)(1)." Section 507(a)(1) describes those administrative expenses that are "allowed under section 503(b)." The operation of § 503(b) is described in § 503(a). Section 503(a) is permissive; as applicable to this case, it said,[3] "An entity *may* file a request for payment of an administrative expense." (Emphasis added). Then § 503(b) says that, "there shall be allowed administrative expenses ... including ... the actual necessary costs and expenses of preserving the estate."

■ In a business of any size and complexity, there are many administrative expenses—ordinary costs of doing business—for which no "request for payment" is ever made to the Court (although the debtor is billed or charged in the normal course). Consequently, those administrative expenses are not "allowed" under § 503(b) and therefore are not governed by § 1129(a)(9). That does not mean that they are disallowed or waived. Certainly some of these are claims that a reorganized debtor would want to pay in any event because of continuing relationships (for example, rent, utilities, and customer claims). But it cannot be true that they and other obligees are at the mercy of the debtor's grace. To leave the reorganized debtor without an obligation to pay ordinary costs of doing business—even those of which the debtor might not be aware—might be constitutionally infirm, inconsistent with 28 U.S.C. § 959,[4] and logically flawed.[5] And yet

er a general unsecured creditor who did not receive a claims bar notice was bound by such a notice in a Chapter 11 case. The court allowed the late-filed claim, even though the creditor was aware of the bankruptcy proceeding, noting that the existence of the creditor's claim was "reasonably ascertainable" to the debtor, and the burden of noticing is on the debtor. Many courts have looked at the similar issue of whether the claim of a pre-petition creditor who never received a claims bar notice pursuant to Fed.R.Bankr.P. 2002(a)(8) is nonetheless discharged by § 1141(d)(1)(A). Basing their decisions on due process grounds, most courts have determined that such a claim is not discharged by confirmation of a Chapter 11 plan. *See, e.g. Adam Glass Serv. v. Federated Dept. Stores,* 173 B.R. 840 (E.D.N.Y.1994); *Orcon, Inc. v. Nevada Emergency Servs., Inc. (In re Nevada Emergency Servs.),* 39 B.R. 859 (Bankr.D.Nev.1984).

Consider also the case of *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Industries, Inc.),* 43 F.3d 714 (1st Cir.1994), which dealt with a slightly different, but analogous issue. In that case, the issue was whether a bankruptcy court order approving a § 363 sale, which purported to sell all of the assets of the debtor to · another company "free and clear" of all encumbrances not specifically mentioned in the sale agreement, could serve to bar a tort claimant from suing the buyer of the assets where the claim arose prior to the sale, but the claimant had no notice of the sale. The First Circuit ruled that the bankruptcy court could not enjoin the tort claimant's suit against the § 363 purchaser because the lack of notice of the § 363 sale to the claimant was a violation of due process.

3. An October 22, 1994 amendment thereto is not of application here.

4. 28 U.S.C. § 959(b) manifests an intention to place debtors-in-possession on an even footing with non-debtors as to business expenses. It provides:

(b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

5. Counsel for Frink argues that it is "both illogical and unfair ... [to] impose on the confirming debtor the risk of lack of notice of a claim known only to the creditor." (Def.'s Responsive Mem. at 6.) This Court disagrees. As often as not, Chapter 11 debtors-in-possession deal with persons on a non-contractual basis, which is to say

Chapter 11 plans of reorganization and confirmation orders do not regularly contain language such as: "Administrative expenses that are ordinary costs of doing business, which are not barred by order, and for which no request for payment has been filed, and as to which there has been no order of allowance, will be paid as they fall due." Rather, § 1141(d)(1) does not discharge those debts because that language must be deemed to be implicit, of necessity, in every plan and order of confirmation.

■■■■ To the extent that § 9.1 of the Frink plan might have purported to accomplish a contrary result, this Court believes that that provision failed on its face. That provision states that

> The rights, as set forth in this Plan, shall be in complete satisfaction, discharge and release of all claims of creditors of any nature whatsoever, including any interest accrued thereon, from and after the petition date against the debtor or any of its assets or properties, except as otherwise provided for herein.

At § 1.9 of the Plan, the term "creditors" is defined to mean "all creditors of the debtor holding claims for debts, liabilities, demands or claims of any character." This Court believes that those provisions are consistent with, and not sufficient to supplant, the definition of "creditor" contained at U.S.C.

§ 101(10), which limits the word "creditor" to those who had a "claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Thus, the language of the Plan that deals with "creditors" concerns claims that arose prior to the filing of the Frink petition under Chapter 11. The specific provisions of the Frink Plan that pertain to "administrative expenses" deal only with administrative expenses "allowed" under § 503. The Frink Plan, like the Code itself, is silent as to administrative expenses for which no request for payment was filed and no order of allowance entered.[6]

The above analysis points out the important role played by so-called "Administrative Bar Orders," even though there has heretofore been no statutory authority or authority under the Federal Rules of Bankruptcy Procedure to fix a bar date for the filing of administrative claims (other than in a case converted to Chapter 7; *see* Fed.R.Bankr.P. 1019(6)).[7] It is routinely acknowledged that a Chapter 11 debtor may need to know what amounts particular administrative claimants are going to claim, in advance of filing a plan or in advance of a hearing on disclosure or confirmation. It is not necessary today to determine the effect of such an order on an administrative claimant who receives it but does not file its request for payment in the fashion provided therein. For today, it is important only to note that no such order

---

that they are dealing with people in ways that might make it difficult for the debtor to remain aware of all claims that have accrued. A common example is that of a store customer who has suffered a "slip and fall" under circumstances that are not immediately brought to the attention of corporate management. Liability on such a claim is an ordinary cost of doing business, but might not be known to the debtor at the time of confirmation of the plan. That fact does not mean that the injured patron's claim should be discharged by § 1141. Statutes of limitations exist in recognition of the fact that there is no duty to assert a claim immediately when it arises. Chapter 11 debtors-in-possession enjoy no right to speedier notification than persons not in bankruptcy.

Product liability presents another illustration. Indeed, if Frink's counsel's argument is correct, it should have equal application to pre-petition claims of which the debtor is unaware. And yet we know that the monumental efforts ordered by courts in cases of debtors such as *A.H. Robbins* to seek out (by worldwide publication notice) and

identify all persons who might have claims against the debtor were not superfluous. It is not sufficient to simply put the world on notice of the fact of bankruptcy and shift the burden to creditors to find out how to assert their claims and what the deadline is for so doing. (There are certain exceptions to this logic, not applicable here. See 11 U.S.C. § 523(a)(3) which, in the case of debtors who are natural persons, discharges the claims of certain unscheduled creditors if those creditors had actual knowledge or notice of the bankruptcy case.)

**6.** The Order of Confirmation entered by the Bankruptcy Court of the Northern District of New York is silent as to administrative expenses. The present Court will make provision, as set forth hereinafter, to defer to the other court as to interpretation of its own order.

**7.** *See also* 3 Collier on Bankruptcy ¶ 503.01 (Lawrence P. King et al. eds., 15th ed. 1995), to the effect that the October 22, 1994 amendments to § 503 were intended to fill that statutory void.

was ever served upon Nuttall, nor is there any suggestion that Nuttall knew of the existence of any such order (if there was such an order entered in the Frink case).

## CONCLUSION

 This Court holds that liability upon preference claims is an ordinary cost of doing business, just as are product liability claims, claims for personal injuries suffered upon business premises, and countless other claims of which a debtor-in-possession might be unaware at the time of confirmation of a plan. Such liability here first became a "claim" against Frink (and therefore a "debt" of Frink under § 1141) when Nuttall filed its Chapter 11 case on August 20, 1993, which was after Frink filed its Chapter 11 case in 1992, but before the Frink Plan was confirmed by Order of November 3, 1993. Nuttall demanded payment of that liability by letter of May 17, 1994. That request could not have been "late" because Nuttall received no notice of an administrative claims bar date (if there was one). That administrative claim was not discharged by § 1141(d) because any sensible and constitutionally sound interpretation of that provision requires that all Chapter 11 plans or orders confirming them, that are otherwise silent on the subject, be deemed to contain an implied provision that such claims will be paid after confirmation "outside the plan" which is to say that they will be paid in the ordinary course.

This holding renders consideration of other arguments unnecessary.[8]

 It is the understanding of the Court that this matter was submitted to the Court for limited purposes. Since this Adversary Proceeding is a preference action on behalf of the Chapter 7 estate of Nuttall, which estate is in the constructive custody of this Court, the parties properly submitted to this Court the question of whether the affirmative defense of discharge under § 1141 could be raised. However, it is the understanding of the Court that the parties specifically reserved to Frink the ability to return to the Bankruptcy Court for the Northern District of New York for matters concerning interpretation of the orders of that court and administration of the Frink estate, to the extent that that estate remains in the constructive custody of that court pursuant to the "retention of jurisdiction" provisions of the Plan.

That is not to say that Frink may seek a "second opinion" on the question of its affirmative defense other than by appeal to the U.S. District Court for the Western District of New York. This Adversary Proceeding is ordered restored to the calendar for a telephonic status conference on October 16, 1995 at 3:00 p.m. At that conference it will be determined whether final judgment will enter or whether this proceeding will move on toward trial regarding § 547(c) defenses or other matters.

SO ORDERED.

### Exhibit

### *STIPULATION*

The undersigned hereby stipulate to the facts set forth below and submit them to the Court for purposes of a determination in this action.

1. Frink America, Inc. ("Frink") filed its Chapter 11 petition in the U.S. Bankruptcy Court for the Northern District of New York in June, 1992 under case number 92–02023 and continued to operate thereafter as a debtor-in-possession.

2. At that time, Nuttall Equipment Co., Inc. ("Nuttall"), was a retail dealer of Frink products, and was obligated for payment of invoices for goods sold and delivered to it on standard business terms.

3. Before and during May, 1993, both Frink and its counsel contacted Nuttall to demand payment of overdue accounts.

---

8. For example, the Trustee argues that the automatic stay which protected Nuttall under § 362 once Nuttall filed its Chapter 11 case, would protect Nuttall from an interpretation of § 1141 that would cut off Nuttall's rights against Frink.

Counsel for Frink argues that the case of *In re Hamilton*, 74 B.R. 454 (Bankr.S.D.Ohio 1987), would cut off the rights of Nuttall to assert a claim post-confirmation because of their failure to enforce their rights in a timely fashion. The Court, however, finds no authority in that case that would upset today's decision.

4. There is no agreement as to the time at which Nuttall became aware of Frink's status as a debtor in its pending Chapter 11 case, and if a factual determination of that date must be made to resolve this case, plaintiff and defendant stipulate that an evidentiary hearing will be required.

5. Payments on accounts that were several months past due on their "net 30" terms were paid to Frink from Nuttall as follows:

a.) $16,000.00 paid 5/27/93;

b.) $ 4,000.00 paid 6/11/93; and

c.) $ 2,000.00 paid 8/17/93

(collectively, the "Payments"), which Payments were received and applied by Frink shortly after those payment dates against the past due accounts in the ordinary course of Frink's business, and thus the Payments fell within the definitions contained in 11 U.S.C. § 547(b).

6. Nuttall filed its Chapter 11 petition in the U.S. Bankruptcy Court for the Western District of New York on August 20, 1993 and thereafter (until conversion as described below) operated as a debtor-in-possession.

7. Nuttall listed the Payments in its Statement of Affairs as payments made within ninety (90) days of the filing of its Chapter 11 petition.

8. In September, 1993, Frink obtained an order in the Bankruptcy Court for the Northern District approving its Disclosure Statement, and pursuant to that order, Frink solicited acceptances of its Plan of Reorganization ("Plan"). A copy of the Plan is annexed as Exhibit "A."

9. A confirmation hearing was held on Frink's Plan on October 29, 1993, at which time the Plan was confirmed.

10. The order confirming the Frink Plan ("Order") was signed by Judge Gerling and entered on November 3, 1993. Nothing contained in this Stipulation shall modify or waive any of the provisions contained in the Order. A copy of the Order is annexed as Exhibit "B."

11. On or about May 17, 1994, Nuttall's counsel notified Frink for the first time of its claim of a right to recovery of the Payments as preferential transfers under § 547 of the U.S. Bankruptcy Code ("Code"). A copy of the letter is annexed as Exhibit "C."

12. On or about June 29, 1994, and prior to the commencement by Nuttall as debtor-in-possession of any litigation on the alleged preference, Nuttall's case was converted to one under Chapter 7 of the Code.

13. The Plaintiff in this action was thereafter appointed as the duly qualified and acting Chapter 7 trustee in this case.

14. On September 19, 1994, the plaintiff wrote to Frink to demand recovery of the allegedly preferential Payments.

15. Frink did not pay in response to the plaintiff's demand, and the plaintiff's Complaint was then served. A copy of the Summons and Complaint is annexed as Exhibit "D."

16. Frink answered and subsequently amended its Answer stating as defenses that:

a.) the Complaint failed to state facts sufficient to obtain relief under 11 U.S.C. § 547(b) and § 547(g).

b.) the defendant has statutory defenses under 11 U.S.C. § 547(c); and

c.) the claims described in the Complaint were adjudicated and discharged under the Order and the Plan.

A copy of the Amended Answer is annexed as Exhibit "E."

17. Nuttall was at no time listed as a creditor by Frink in Frink's Chapter 11 case, and it was not included in the mailing matrix.

18. Nuttall did not file a Proof of Claim in the Frink Chapter 11 case.

Nothing herein shall be construed as a modification or waiver of any term of the Order or Plan.

Dated: July 14, 1995

By: /s/ Mark S. Wallach
Mark S. Wallach, Esq., Trustee in
Bankruptcy of the Nuttall
Equipment Co., Inc.
169 Delaware Avenue
Buffalo, New York 14202

Dated: July 11, 1995

By: /s/ Dale B. Johnson

Dale B. Johnson, Esq.
Menter, Rudin & Trivelpiece, P.C.
Attorneys for Frink America, Inc.
Office and Post Office Address
500 South Salina Street, Suite 500
Syracuse, New York 13202