KLEINFELD, Circuit Judge:
 

 This is a chapter 11 bankruptcy case. The debtor did not timely list a creditor known to him, and the reorganization plan was confirmed before the creditor attacked it. The question is whether the creditor is bound by the confirmation of the plan.
 

 FACTS
 

 Mr. Levin and Maya Construction agreed that Maya would place fill dirt excavated elsewhere on Levin’s land. The soil, excavated at a local bridge project Maya was working on, turned out to be contaminated with diesel fuel. Mr. Levin’s lawyer wrote to Maya in November of 1990 demanding that, pursuant to its contract, Maya defend, indemnify and hold harmless Mr. Levin from all consequences of the contaminated soil, and proceed with an environmental assessment by a qualified person on Mr. Levin’s behalf.
 

 Subsequent to the contamination, there were conversations between Mr. Levin and Mr. Ruiz, the president of Maya. There is some ambiguity about exactly what they said to each other concerning the possibility of Mr. Levin suing Maya. Mr. Ruiz said in his affidavit that Mr. Levin told him either that Mr. Levin recognized that he had no claim, or that he preferred to sue a third party and have Maya as an ally instead of an adversary:
 

 In the discussions between [Ruiz] and Lev-in, Levin indicated to [Ruiz] he had no claim, or was proposing to file no claim against Maya Construction Company but that he did want to obtain from the undersigned its cooperation and assistance in pursuing his claim against the Arizona Department of Transportation.
 

 In Mr. Levin’s recollection, he intended not to sue Maya when he thought Maya had been ignorant of the diesel fuel contamination, but changed his mind when he discovered that Maya had known about the contamination:
 

 [Alan Levin says] [t]hat Roberto Ruiz and/or Maya Construction at no time were informed that a claim would not be made, as I discussed the contamination with Roberto Ruiz but at that time had no facts which indicated that Maya Construction Company knew that the soil being placed on my property was contaminated.
 

 That I, Alan Levin, was not aware of any potential liability of Maya Construction with regard to the contaminated soil on my property until after the hearing on confirmation of the Maya Construction Plan of Organization.
 

 Affidavit of Alan Levin, February 8,1993, at 1, 5.
 

 Although Mr. Levin’s and Mr. Ruiz’s recollections differ, they agree on what is material to this bankruptcy case: Mr. Ruiz knew that (1) Mr. Levin believed that Mr. Ruiz had put contaminated soil on Mr. Levin’s land; (2) Mr. Levin had sent a formal written notice that he had a claim against Maya; (3) Mr. Levin stated orally that he did not intend to pursue the claim against Maya. The possibility that Mr. Levin might sue Maya concerned Mr. Ruiz enough that he hired an attorney to prepare an evaluation of the potential claim. The record does not establish whether Mr. Ruiz retained counsel regarding Mr. Levin’s potential claim before or after the conversations in which Mr. Levin, as Mr. Ruiz recollected them, said that Mr. Levin had no claim or was not proposing to file a claim against Maya.
 

 
 *1397
 
 On February 22, 1991, Maya Construction filed for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101,
 
 et seq.
 
 This filing date was about three and one half months after Maya had received Mr. Levin’s lawyer’s written demand. It was after Maya asked its own attorneys to evaluate Mr. Levin’s possible claim against Maya. Mr. Ruiz’s declaration does not claim that Mr. Levin had made his statements about not filing a claim prior to the bankruptcy filing. All Mr. Ruiz says is that these conversations were “prior to
 
 August 23, 1991,
 
 the claim bar date.” (emphasis in original).
 

 Maya did not list Mr. Levin as a creditor. In March 1991, Maya filed the “Master Mailing List” required by the bankruptcy court of all creditors. Mr. Levin was not on the list. Maya also left Mr. Levin
 
 off
 
 the statement of financial affairs and schedule of liabilities it filed in March. The bankruptcy ease proceeded without Mr. Levin. In June, Maya filed a plan of reorganization and disclosure statement. In July, Maya sent all creditors, but not Mr. Levin, notice of the hearing on its reorganization plan and bar date for filing claims. The only evidence on the record that Mr. Levin knew Maya was engaged in a bankruptcy proceeding before December is Mr. Ruiz’s statement in his affidavit that “prior to
 
 August 23, 1991,
 
 the claim bar date in the above captioned matter, the undersigned had discussions with Alan L. Levin (“Levin”) in which discussions it was evident that Maya Construction Company was a Debtor in a Chapter 11 proceeding.” (emphasis in original).
 

 On December 3, 1991, the bankruptcy court approved a final reorganization plan, “subject to everyone signing off on form of order.” Mr. Levin still was not in the case, never having been served with any notice.
 

 Mr. Levin’s name first appears in the bankruptcy court file December 20, 1991. Maya filed a “Request for Addition to Debt- or’s Master Mailing Matrix,” attaching 70 names in mailing label form. Maya filed an amended schedule of creditors the same day, listing Mr. Levin as having a contingent claim for contaminated soil. On December 26, Maya filed an “Objection To Contingent Claim of Alan L. Levin” and notice of hearing in January, and served the objection and notice on Mr. Levin. Mr. Levin filed a response on January 23, 1992, giving notice of his claim estimated at $500,000 for damage to his property on account of the contaminated soil. At the hearing, the court directed that the claim be designated an adversary proceeding and set it for trial in October. Subsequently it was rescheduled for January of 1993.
 

 Meanwhile, on February 24, 1992, the bankruptcy court entered an order confirming the reorganization plan as anticipated at the December 3 hearing. Mr. Levin’s name and address are in the matrix of mailing labels attached to an affidavit signed by Maya’s attorney, in which he swears that he sent a notice of the February 24 order to all persons on that list. Mr. Levin and his wife submitted affidavits that they had not received this notice, but the bankruptcy court found that the notice had been mailed to them. Mr. Levin had not, during the approximately two months between his first notice and the court’s confirmation of the plan, filed any paper to prevent the confirmation.
 

 A little less than a year later, on January 12,1993, Mr. Levin filed a motion to obtain a judicial determination of whether he was bound by the confirmation of the reorganization plan. He argued that he had been entitled to notice of the plan and an opportunity to object, and had been denied those rights. The bankruptcy court made findings of fact, evidently based on the written submissions described above:
 

 The court finds that the debtor was hired by Levin to place soil on [Levin’s] property; that such soil was contaminated; that Levin discovered the contamination pre-petition; that the debtor filed its petition under Chapter 11 on February 2, 1991; that Levin had actual notice of the debtor’s bankruptcy; that Levin did not file a claim in this matter prior to the bar date; that Levin did not ask the court to extend the bar date; and that the debtor did not file a claim in Levin’s behalf.
 

 The court also finds that Levin was not placed on the master mailing list by debt- or, nor did Levin request to be added;
 
 *1398
 
 that the debtor’s disclosure statement was approved on October 24, 1991; that the debtor’s plan was initially confirmed on February 24, 1992; that Levin did not receive notice of the hearings concerning the debtor’s disclosure statement and plan; that Levin was added to the master mailing list and that his claim was added to the debtor’s schedules on December 20, 1991; that the notice of the order of confirmation was mailed to Levin and that Levin did not file an objection to or appeal the confirmation order.
 

 The court further finds that Levin did not know of its claim against the debtor until after the debtor’s plan was confirmed; and that during the pendency of the case, Levin indicated that he would not file a claim in this bankruptcy.
 

 The bankruptcy court decided that Levin was bound by the plan, despite his lack of proper notice, on two grounds: first, since Levin had indicated that he would not file a claim, Maya “had knowledge that a claim would
 
 not
 
 be filed,” and Levin could not be a known creditor; second, based on Levin’s statement that he did not learn of the existence of his claim until after the plan was confirmed, Maya should not be held responsible for not acknowledging a claim Levin himself did not know of. As the court saw it, Mr. Levin knew of the contamination and, because of the financial significance of such an event, had good reason to investigate his possible claim fully between 1989, when Maya put the contaminated soil on his land, and 1992, when the plan was confirmed, yet told Maya he did not intend to make a claim against Maya. The court also noted that Levin did not object to discharge of his claim until ten months after the plan was confirmed.
 

 Mr. Levin appealed to the district court, which affirmed. The district court concluded that the bankruptcy court had erred in treating Mr. Levin as an unknown creditor, because Maya had retained counsel to evaluate his potential claim and knew that he had the potential to make a claim. Nevertheless, the district court determined that Mr. Levin was barred because he did not seek to file an untimely claim despite the numerous procedural mechanisms open to him.
 

 ANALYSIS
 

 Mr. Levin’s argument is that he should not have been held bound by the confirmation of the plan because Maya knew of his claim, yet did not give him notice of the time fixed for filing objections to the plan, notice of the hearing considering confirmation of the plan, or any other relevant notice.
 

 We review the bankruptcy court’s findings of fact for clear error, Fed. R.Bankr.P. 8013, and its conclusions of law
 
 de novo. In re Professional Inv. Properties,
 
 955 F.2d 623, 626 (9th Cir.1992). We independently review the bankruptcy court’s determinations and do not give deference to the district court.
 
 In re Weisman,
 
 5 F.3d 417, 419 (9th Cir.1993).
 

 We agree with the district court that the bankruptcy court erred in treating Mr. Lev-in’s claim as one not known to Maya, and that Levin was entitled to formal notice of the proceedings. Though Levin told Mr. Ruiz he was not going to sue Maya, Mr. Levin’s lawyer sent Maya a formal written demand which gave Maya reason to think the contrary. The record does not show which came first. Maya had nothing of formality comparable to the lawyer’s letter, such as a written release, discharging Mr. Levin’s potential claim. Mr. Levin’s state of mind and intention did not obviate Maya’s knowledge that it had placed contaminated soil on Lev-in’s land and that, whether he planned to sue Maya or not, he had a potential claim. Maya, as the district judge noted, understood the seriousness of the potential claim and caused its attorneys to provide an evaluation of it.
 

 Maya was required to file a list of all creditors and a schedule of liabilities and assets. 11 U.S.C. § 521(1). The debtor lists the creditors, so it is the debtor’s knowledge of a creditor, not the creditor’s knowledge of his claim, which controls whether the debtor has a duty to list that creditor.
 
 See In re Hi-Lo Powered Scaffolding, Inc.,
 
 70 B.R. 606, 610 (Bankr.S.D.Ohio 1987) (rejecting idea that “a claim arises only at such time as the entity asserting the claim learns of its existence.”). The bankruptcy court must
 
 *1399
 
 give formal notice of the first meeting of creditors to all creditors. Fed.R.Bankr.P. 3002. The notice must also advise of the method and deadline for filing a proof of claim. Fed.R.Bankr.P. 2002. Maya neither listed Levin as a creditor nor gave him any of the requisite formal notices. This is significant because if a contingent creditor such as Mr. Levin fails to file a proof of claim within the prescribed time limit, his claims are discharged by confirmation of a reorganization plan. 11 U.S.C. § 1141(d)(1)(A).
 

 Generally, if a known contingent creditor is not given formal notice, he is not bound by an order discharging the bankruptcy’s obligations. The fact that a creditor has actual knowledge that a Chapter 11 bankruptcy proceeding is going forward involving a debtor does not obviate the need for notice. As the Supreme Court explained in
 
 New York v. New York, New Haven & Hartford R.R. Co.,
 
 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953):
 

 “Nor can the bar order against New York be sustained because of the city’s knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on the creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory ‘reasonable notice’ will be given them before their claims are forever barred....
 

 The statutory command for notice embodies a basic principle of justice — that a reasonable opportunity to be heard must precede judicial denial of a party’s claimed rights.”
 

 Id.
 
 at 296-97, 73 S.Ct. at 301.
 

 A debtor must list a creditor whose identity and claim he knows. 11 U.S.C. § 521. The burden is on the debtor to cause formal notice to be given; the creditor who is not given notice, even if he has actual knowledge of reorganization proceedings, does not have a duty to investigate and inject himself into the proceedings.
 
 Id.; In re Spring Valley Farms, Inc.,
 
 863 F.2d 832, 835 (11th Cir.1989);
 
 In re Intaco Puerto Rico, Inc.,
 
 494 F.2d 94, 99 (1st Cir.1974);
 
 In re Harbor Tank Storage Co., Inc.,
 
 385 F.2d 111, 114 (3d Cir.1967). Maya seeks to free itself of an obligation by means of a federal court judgment. As a matter of due process, the person whose entitlement to money from the debtor will be destroyed by the judgment is entitled to notice.
 
 Collier on Bankruptcy
 
 § 1141.01(b), at 1141-17 & n. 40 (Lawrence P. King ed.) (1993).
 

 Our chapter 7 and 13 cases,
 
 In re Coastal Alaska Lines, Inc., 920
 
 F.2d 1428 (9th Cir.1990), and
 
 In the Matter of Gregory,
 
 705 F.2d 1118 (9th Cir.1983), are distinguishable because the lack of formal notice of a proof of claims deadline is not as significant in those chapters. In contrast to the rule governing proofs of claims in a Chapter 11 suit, which instructs the court to fix a proof of claims deadline and permits the court to extend that deadline “for cause shown,” Fed.R.Bankr.P. 3003(c)(3), the rule governing Chapter 7 and 13 proceedings provides that proofs of claim shall be filed within 90 days of the first creditors meeting and specifies limited exceptions. Fed.R.Bankr.P. Rule 3002. Thus, once the creditors in
 
 Coastal
 
 and
 
 Gregory
 
 had received notice of the creditors meeting, they had effective notice that proofs of claim were due within 90 days, unless very limited exceptions applied.
 
 See In Re Unioil,
 
 948 F.2d 678, 683 (10th Cir.1991) (“the rule that governs notice and dischargeability in Chapter 7 does not apply in Chapter 11” so formal notice of bar date is necessary in a Chapter 11 proceeding even if not necessary in Chapter 7). In contrast to creditors in a Chapter 7 or 13 case, even if Levin had received notice of a creditors meeting or any other formal notice,
 
 which he did not,
 
 he still would not have known when the deadline for filing proofs of claims was, and therefore, cannot be said to have been given any notice. In
 
 Coastal Alaska Lines,
 
 even though the creditor did not receive notice of the claims bar date, he received a copy of the first notice of creditors meeting. Likewise, in
 
 Gregory
 
 the creditor received notice of the meeting of creditors.
 

 Maya also cites
 
 Wright v. Placid Oil Company,
 
 107 B.R. 104, 106-07 (N.D.Texas 1989) (injured worker not known because he did not file suit for injury until after the deadline
 
 *1400
 
 had passed);
 
 see also Chemetron Corp. v. Jones,
 
 72 F.3d 341 (3d Cir.1995) (residents and visitors of a neighborhood containing a toxic site were not known because their identities and the fact of injury was not reasonably ascertainable prior to their filing a tort suit). These cases are distinguishable because the debtor could not identify the potential creditors. Maya knew Mr. Levin had a potential claim against it. Knowing also that Mr. Levin did not intend to sue did not obviate the fact that he had a claim on which he could sue, if he learned more or changed his mind. Knowing that a potential claimant does not presently intend to sue is not equivalent to discharge of a claim, as for example by a release.
 

 The district court concluded that Mr. Levin forfeited his claim by not acting more rapidly and aggressively to derail confirmation of the plan. The bankruptcy court ruled against Levin on a different ground, which we and the district court have rejected, that Mr. Levin’s claim was not known. Accordingly, we vacate the judgment, and remand to the bankruptcy court so that it can determine whether, despite Maya’s failure to list Mr. Levin as a creditor when it should have, the subsequent notice to Mr. Levin would cause his claim to be discharged by the order confirming the plan.
 
 See In re Remington Rand Corp.,
 
 836 F.2d 825, 833 (3d Cir.1988) (remand to determine whether four year delay between creditor’s knowledge and action was too long). The bankruptcy court should decide in the first instance whether, when Mr. Levin eventually was served, he had notice that the proceedings were far advanced and, by waiting too long to take action, “ignore[d] the proceedings to which the notice refers at [his] peril.”
 
 Gregory,
 
 705 F.2d at 1123.
 
 See In re Hunt,
 
 146 B.R. 178 (Bankr.N.D.Tex.1992) (two and one half year delay too long);
 
 In re Pagan,
 
 59 B.R. 394 (Bankr.D.P.R.1986) (four year delay too long).
 

 Accordingly, the district court judgment is REVERSED, and the bankruptcy court judgment is VACATED and REMANDED so that the bankruptcy court can make the determination set out above.