MONSTER CONTENT, LLC, Plaintiff,

v.

HOMES.COM, INC., Defendant.

No. C 04–0570 FMS.

United States District Court, N.D. California.

Jan. 7, 2005.

James P. Martin, Tracy L. Salisbury, Tracy A. Donsky, Shartsis Friese & Ginsburg LLP, San Francisco, CA, Charles W. McElroy, White & Reasor, Nashville, TN, for Plaintiff.

Gerald Patrick Kennedy, Procopio, Cory, Hargereaves & Savitch, San Diego, CA, for Defendant.

**ORDER DENYING HOMES.COM, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING MONSTER CONTENT, LLC, SUMMARY ADJUDICATION**

FERN M. SMITH, District Judge.

## INTRODUCTION

This motion arises from a dispute over a licensing agreement between the Plaintiff Monster Content, LLC ("Monster Content") and the Defendant HOMES.COM, Inc. ("Homes"). Monster Content alleges that Homes breached its licensing agreement with Monster Content by providing its customers with direct access to a product that it was not licensed to provide. Homes moves for summary judgment on the basis of an affirmative defense that part of Monster Content's claim is barred by Homes's completed bankruptcy proceeding. Having considered the pleadings and papers filed by both sides, the Court DENIES Homes's motion for partial summary judgment and finds that Monster Content is entitled to summary adjudication on the issue that its claims are not barred by the Homes bankruptcy.

## BACKGROUND

Monster Content is the successor, by a series of asset purchases, to the assets of two predecessor owners, MonsterDaata, Inc. ("MDI") and Fishman & Davis, LLC ("F & D"). Monster Content and its predecessors in interest (the "Licensor") are in the business of providing Internet-based data report products, including products marketed under the names "Channel Reports" and "Listing Plus" which are at issue in this litigation. Homes (the "Licensee") is in the business of maintaining and managing web sites for Real Estate Agents and Brokers (the "customers").

Under a licensing agreement (the "Agreement") executed between MDI, as

Licensor, and Homes as Licensee effective April 1, 2002, MDI agreed that Homes would provide its customers with direct access to several MDI products, including "Listing Plus" and "Channel" products, for a specified fee paid by the customers and shared between the parties. The Agreement also provided that MDI "will provide to Licensee a bulk data delivery of a subset of the School data as a replacement for what is already on Licensee's site. This data will be updated annually on servers operated and maintained by Licensee." There was no fee under the Agreement for the bulk data delivery. A substitute version of the Agreement effective July 22, 2002 was identical except that it substituted F & D as the Licensor.

Monster Content alleges that Homes breached the Agreement by providing its customers access to the Licensor's "Schools Lite" Channel, a Channel product that allegedly was not included in the Agreement, free of charge and without any compensation to Monster Content. Homes alleges that, as part of the technical implementation of the Agreement, the Licensor agreed to provide Schools Lite without charge in fulfillment of the provision of the Agreement relating to the bulk delivery of "a subset of the School data." The alleged breach took place between May 2002 and February 2003 and involved the access or potential access of 54,546 Homes customers. Monster Content alleges that the breach was discovered in February 2003 when Homes sent its first accounting of revenue allegedly received under the Agreement, together with a check purporting to cover the owed license fees. At this time, Monster Content conducted an analysis that revealed that Homes customers were accessing the Schools Lite Channel product who were not reflected in Homes's accounting.

Homes's summary judgment motion has as its sole issue the question of whether Monster Content's claims are partially barred by its prior bankruptcy proceeding in the Northern District of California, Case No. 01–30698–SFM11 (the "Homes Bankruptcy"). Most of the material facts relating to the Homes Bankruptcy are undisputed. Homes filed for Chapter 11 bankruptcy on or about March 23, 2001. A Joint Plan of Reorganization was filed on September 20, 2002, and the Bankruptcy Court entered the Order Confirming Debtor's Joint Plan of Reorganization on October 31, 2002. The Notice of Entry of the bankruptcy Discharge Order was filed and served on November 14, 2002. The Joint Plan of Reorganization provided for the discharge of debts that arose before confirmation:

> Except as otherwise provided herein or in the Confirmation Order, Confirmation shall discharge the Debtors and the Reorganized company from all debts that arose, or are treated under the Code as if they had arisen, at any time before Confirmation.

The Joint Plan of Reorganization also contained a "bar date" for the filing of administrative claims under which "any and all claims" against Homes incurred after the Homes Bankruptcy Filing were to be filed in the Homes Bankruptcy no later than 30 days after the Notice of Entry, or in this case, by December 14, 2002. A Final Decree was entered closing the Homes Bankruptcy in July 2003.

In their "Joint Statement of Undisputed Facts," the parties further agree on the following facts that are relevant to Monster Content's knowledge of the Homes bankruptcy: that Homes did not, at any time, seek or obtain approval in the Homes Bankruptcy of the Agreement or the substitute version of the Agreement; that in August and/or September 2002, Rudy

Ruark ("Mr. Ruark"), on behalf of the Licensor's secured lender Commerce Capital, L.P. ("Commerce") was informed by John Perkins ("Mr. Perkins") on behalf of Homes that Homes was a debtor in a bankruptcy case and that Homes hoped to come out of the bankruptcy sometime soon; and that sometime during the fall of 2002, Monster Content was informed by Commerce that Homes was a debtor in a bankruptcy case. It is also undisputed, for purposes of this motion only, that no formal notices concerning the Homes Bankruptcy were sent to Monster Content or any of its predecessors in interest, including Commerce. Relevant to the question of whether Homes knew that the Licensee was a potential creditor are two additional undisputed facts: that on or about September 13, 2002, Mr. Ruark sent Homes a letter that mentioned the possibility of claims held by the Licensor against Homes; and that it was Homes's responsibility to report revenues under the Agreement and to collect from its customers to pay Licensor its share of the revenue pursuant to the Agreement.

Based on the provisions of the Joint Plan of Reorganization that discharges debts that arose before confirmation, Homes seeks summary judgment barring the claims of Monster Content that are based upon alleged conduct occurring prior to October 31, 2002. According to Homes, of the 54,546 Homes customers who allegedly improperly accessed the Schools Lite link, almost two-thirds did so between May 2002 and the entry of the Confirmation Order on October 31, 2002. Monster Content has not cross-moved for summary judgment, but notes that the Court may, *sua sponte*, grant summary judgment in favor of the non-moving party if deemed appropriate under Federal Rule of Civil Procedure 56. *Kassbaum v. Steppenwolf Productions, Inc.,* 236 F.3d 487, 494 (9th Cir.2000). The Court heard oral argument on the motion on January 6, 2005.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

■■■ Homes argues that it should be granted summary judgment with respect to that part of Monster Content's claim that is based upon alleged conduct that occurred prior to the Order Confirming Debtor's Joint Plan of Reorganization. Homes cites the relevant provisions of 11 U.S.C. § 1141(d)(1) stating that the order confirming the plan "discharges the debtor from any debt that arose before the date of such confirmation ... whether or not (i) a proof of the claim based on such debt is filed or deemed filed under Section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan ... "

For purposes of the discharge in bankruptcy, a claim arises at the time of the events giving rise to the claim. 11 U.S.C. § 101(5); *O'Loghlin v. County of Orange,* 229 F.3d 871, 874. A bankruptcy court's confirmation is a final binding order, accorded full res judicata effect and precludes the raising of issues which could or should have been raised during the pendency of the case. *In re Heritage Hotel Ltd. Partnership I,* 160 B.R. 374, 377 (9th Cir. BAP 1993) *accord Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995).

■ Notwithstanding the broad language of 11 U.S.C. § 1141(d), due process demands that a creditor in a Chapter 11 case receive reasonable notice of a claims bar date before it is effective against the creditor. *City of New York v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953). The Supreme Court has repeatedly held that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citing *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

■ Bankruptcy law divides creditors into two groups when determining the proper notice to be given of bar dates: known and unknown creditors. As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane,* 339 U.S. at 317, 70 S.Ct. 652.

■ A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Reasonable diligence does not require "impracticable and extended searches ... in the name of due process." *Mullane,* 339 U.S. at 317, 70 S.Ct. 652. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.),* 125 B.R. 650, 654 (M.D.Fla.1991). *See also Trump Taj Mahal Assocs. v. O'Hara (In re Trump Taj Mahal Assocs.),* 1993 WL 534494, 1993 U.S. Dist. LEXIS 17827 (D.N.J. Dec. 13, 1993) (explaining that "those creditors who hold only conceivable, conjectural or speculative claims" are unknown).

■ Homes contends that Monster Content was an unknown creditor. The facts in this case, however, belie its argument. It is undisputed that on September 13, 2002, shortly before Homes filed its proposed plan and obtained its order of confirmation, Mr. Ruark, on behalf of Licensor, sent a letter to Homes alleging a potential misuse of Licensor's trade secrets by Homes and threatening to "seek all available recourse and remedies under applicable law." Homes states that it conducted an investigation and examination of its own books, records and documents and concluded that the asserted claims were based on "mere speculation and conjecture." *The Ninth Circuit case of Levin v. Maya Constr. (In re Maya)* 78 F.3d 1395 (9th Cir.1996) had similar facts. In that case,

the court found that the creditor was a known creditor where the creditor's lawyer had sent a formal written demand letter alleging a potential claim and Maya had "understood the seriousness of the potential claim and caused its attorneys to provide an evaluation of it." *In re Maya* at 1398. Even if Homes considered the claims asserted by Monster Content to be speculative, moreover, there can be no doubt that Homes knew it had a license agreement and that it knew or should have known that it owed money on the license. Monster Content was thus, at the least, a known creditor to Homes for whatever sums were due under the Agreement. As a known creditor, it was entitled to formal notice of the Homes Bankruptcy. *Id.*

The cases that Homes cites to support its argument that Monster Content was an unknown creditor are easily distinguishable on their facts. In those cases, the debtor reasonably considered the creditor's potential claims to be abandoned or the debtor could not identify the potential creditors. *See In re Charter Co.* (oil company was an unknown creditor when its claim arose out of a payment dispute that occurred three years before Charter's bankruptcy); *In re Trump Taj Mahal Assocs.* (a former employee was an unknown creditor when his claim arose out of a compensation-related dispute two years before Trump's bankruptcy.). *In re Brooks Fashion Stores, Inc.*, 124 B.R. 436 (Bankr.S.D.N.Y.1991) (an agency of the state of Michigan was an unknown creditor when its claim arose from the fact that it had a right to redetermine taxes, after the fact, under Michigan law.); *Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir.1995) (residents and visitors of a neighborhood containing a toxic site were unknown creditors because their identities and the fact of injury was not reasonably ascertainable prior to their filing a tort suit.) *Cf. In re Maya* at 1400.

Homes also contends that because Monster Content had actual knowledge of the Homes Bankruptcy, the requirement of notice was satisfied. Monster Content does not dispute that it learned from Commerce sometime in the fall of 2002 that Homes was in bankruptcy. Ninth Circuit law, however, rejects the proposition that actual knowledge of a bankruptcy proceeding supplants the requirement of formal notice for a known creditor. In *In re Maya*, the court stated "Generally, if a known contingent creditor is not given formal notice, he is not bound by an order discharging the bankruptcy's obligations. The fact that a creditor has actual knowledge that a Chapter 11 bankruptcy proceeding is going forward involving a debtor does not obviate the need for notice." *Id.* at 1399. See also *Wallach v. Frink America, Inc. (In re Nuttall Equipment Co.)*, 188 B.R. 732 (Bankr.W.D.N.Y.1995). As held by the Supreme Court, "even creditors who have knowledge of an reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." *City of New York*, 344 U.S. at 297, 73 S.Ct. 299. In this case, it is undisputed that no formal notices concerning the Homes Bankruptcy were sent to Monster Content or any of its predecessors in interest, or to Commerce. While Monster Content became aware sometime in the fall of 2002 that Homes was in bankruptcy, it was not provided with any notice of the proposed plan of reorganization; any notice of the claims bar date; or any notice of the motion, hearing date or order of confirmation.

Finding that Monster Content's claims that arose before the entry of the order of confirmation were not discharged by the Order Confirming Debtor's Joint Plan of Reorganization because of insufficient no-

tice, the Court needs not address the parties' arguments with respect to whether the obligations at issue were ordinary course of business debts.

## CONCLUSION

For the reasons set forth above, the Court DENIES Homes's motion for summary judgment and GRANTS Monster Content summary adjudication on the sole issue that its claims are not barred by the Homes Bankruptcy.

**IT IS SO ORDERED.**