**In re CRC WIRELINE, INC., Debtor.**

**Bankruptcy No. 587–50091–11.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

April 21, 1989.

Myrtle McDonald, Blumrosen & McDonald, Lubbock, Tex., trustee.

Katheryn Kasten, Asst. Atty. Gen., Austin, Tex., for comptroller.

MEMORANDUM OF OPINION ON TRUSTEE'S OBJECTION TO CLAIM OF TEXAS STATE COMPTROLLER FOR SALES–USE TAXES

JOHN C. AKARD, Bankruptcy Judge.

On October 21, 1986, CRC Wireline, Inc., filed a voluntary petition under Chapter 11 of the Bankruptcy Code [1] in the Northern District of Texas, Fort Worth Division. The Debtor's petition was administratively consolidated into Case No. 486–42209 with related corporate ventures on October 30, 1986, and this consolidation terminated by order of the court on December 31, 1986. Orders for the appointment of a Trustee and transferring the case to the Lubbock Division were also entered on December 31, 1986. After denial of motions for a new trial concerning the appointment of a Trustee were entered on January 24, 1987, the case was received as a transfer from the Fort Worth Division on February 2, 1987.

The issue is whether the Texas State Comptroller's claim for sales-use taxes, and its amendment, should be disallowed as untimely in view of the undisputed fact that it was filed three days after the Bar Date.

### STATEMENT OF FACTS

At the time the bankruptcy petition was filed in 1986, there was pending before the Comptroller of Public Accounts a petition by the Debtor for redetermination of sales taxes due as a result of an audit for a period beginning October 1, 1979, and extending through September 30, 1983. The State of Texas, Bob Bullock, Comptroller, was listed by the Debtor's petition as a creditor of CRC Wireline for fuel-use tax in the amount of $159.40, but was not placed on the matrix.

On November 1, 1986, the Debtor filed its Motion to Restrict and Limit Notice on Motion for Order Establishing a Bar Date, for filing Proofs of Claim and for Objections to certain guarantees, liens and transfers. On November 13, 1986, an Order Restricting and Limiting Notice was filed by the Debtor. On November 14, 1986, an Order Establishing Bar Date was entered, setting December 12, 1986 as an expedited bar date for unscheduled, contingent, disputed or unliquidated amounts. This order decreed that counsel for the Debtor transmit to all creditors within 48 hours a notice setting forth the Bar Date established.

Notice of setting Bar Date was served November 21, 1986, to all creditors on the matrix. Notice of the motion setting the bar date was also published in the *Houston Chronicle* on November 21 and December 8, 1986, and was published in *The Wall Street Journal* distributed in New York County, New York; Naperville, Illinois; Palo Alto, California; and Dallas, Texas, on December 8, 1986. No notice of the setting of a bar date was mailed to the Comptroller, although the Comptroller was listed by the Debtor as a creditor.

The State Comptroller's office received actual notice of the filing of bankruptcy petition on November 3, 1986. The State then timely prepared and submitted a claim for oil and gas well servicing or fuel-use taxes, which was filed on December 12, 1986. On December 15, 1986, the Comptroller's office submitted a separate claim for sales-use taxes, for the period of October 2, 1979, through September 30, 1986, in the amount of $489,588.89, inclusive of penalty.[2]

This first sales-use tax filing by the State, designated Secured and Priority Proof of Claim, indicated that statutory tax liens were filed on April 14, 1986, in Tarrant County and on April 16, 1986, in Dallas County, Texas. The security interest held by the State, noted in these two lien filings as "including, but not limited to all outlets in the State of Texas," acts to cre-

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

**2.** This amount includes $335,249.36 tax, $154,-338.14 in interest and $1.39 as penalty.

ate a lien on the Debtor's property.[3] This filing asserts the priority of the tax claims pursuant to § 507(a)(7) of the Code, and seeks payment in accordance with the dictates of § 1129(a)(9)(C). The penalty portion of this claim is asserted to be unsecured only to the extent that the security interest claimed by the State is insufficient to satisfy this portion of the claim.

A Trustee was appointed on January 26, 1987; thereafter the State Comptroller's office requested authority to audit the Debtor in the spring of 1987 for possible sales-use tax liability. The Trustee agreed to allow this audit without the necessity of a lift of stay—this agreement, however, was only to allow the auditor to audit without the necessity for a Motion to Lift Stay. This audit was completed and a final decision was pending at the time Debtor filed its objection to the State's claim.

On August 24, 1987, the State filed an amended claim covering the period October 1, 1979 to October 21, 1986, which included additional sales-use taxes due, raising the total to $631,426.04, inclusive of tax, penalty and interest.[4] This amended filing, except for the increased amounts claimed, is substantially similar to the claim filed in December of 1986, but covers a period up to the date of the Debtor's petition in bankruptcy.

### Positions of the Parties

The Trustee does not in any way dispute the secured status of the tax lien of the State of Texas. The Trustee only disputes the timeliness of the filing of the sales-use tax claim, and the amended claim. The basis of the trustee's argument is that even though the State Comptroller may not have received an actual copy of the notice setting the bar date, the State Comptroller should have made further inquiry as it had actual notice of the bankruptcy petition filed by the Debtor. Secondly, regardless of this affirmative duty to inquire, the Trustee contends that all due process re-

quirements in this matter were met by the Notice by Publication.

The Trustee argues that time limits are necessary for the orderly administration of bankruptcy cases, and that it is the clear Congressional intent as expressed in the Bankruptcy Code and Rules to establish a scheme to promote certainty and finality of creditors' claims. Thus, the Trustee advances the position that to reopen this action by allowing the Comptroller to file his proof of claim for sales-use taxes would upset the orderly administration of this action, contrary to the Congressional intent as expressed in the Code and Rules.

Furthermore, the Trustee advances the argument that since the State has placed a lien on property of the Debtor for the taxes due, which the Trustee in no way attempts to avoid, this fact argues for the conclusion that it would be inequitable to allow the State's claim as timely. Finally, the Trustee argues that at no time has the State requested an enlargement of time or requested permission for late filing of its claim, nor has it entered a notice of appearance or request for service, thus, it has not availed itself of the proper remedies statutorily afforded to it.

The Comptroller argues that the Trustee's objection to its sales-use tax claim be overruled because it was a known creditor, and was therefore entitled to actual notice of the bar date, and that notice by publication in this instance violates due process requirements. Further, the Comptroller states that it had no affirmative duty to inquire as to the existence of a Bar Date, even though it had actual notice prior to the Bar Date of the debtor's Petition in Bankruptcy. Alternatively, the Comptroller argues that it was not required to file a proof of claim for sales-use taxes since it is a secured creditor, by virtue of tax liens filed in April of 1986. Thus, the Comptroller argues its claim for sales-use taxes should be allowed to be filed as a secured claim.

---

**3.** No issues arise as to the validity of these tax liens, as the Trustee in no way disputes the priority of the State's liens.

**4.** This amount includes $447,469.99 tax, $172,808.10 in interest and $11,147.95 as penalty.

## DISCUSSION

■ The essential element of due process of law is an opportunity to be heard, and a necessary condition of such opportunity is notice. *Simon v. Kraft*, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165 (1901). While personal service is not necessary in all cases, and constructive notice may be sufficient, *see Ballard v. Huster*, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461 (1907), in order to determine whether or not notice by publication is sufficient for due process of law, it is necessary to look to the circumstances of each case, as where personal service is not possible or impractical, service by publication may be quite reasonable. *See Security Savings Bank v. California*, 263 U.S. 282, 288, 44 S.Ct. 108, 111, 68 L.Ed. 301 (1923). Constitutional due process requires that notice be fundamentally fair and reasonably calculated to appraise interested parties of what is occurring. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950).

■ Merely because a procedure is permitted under the Code or the Rules does not mean that it is constitutionally sufficient, as a known creditor is entitled to actual notice of a Bar Date. *See City of New York v. New York, New Hampshire and Hartford R.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). *Accord, In re Charter Co.*, 68 B.R. 396, 399 (Bankr.M. D.Fla.1986). Therefore, under constitutional due process requirements, a known creditor must receive actual notice of a Bar Date in order for such creditor's claim to be forever barred. *Accord, Reliable Elect. Co. v. Olson Const. Co.*, 726 F.2d 620, 622–23 (10th Cir.1984); *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94, 99 (1st Cir.1974); *In re Harbor Tank Storage Co.*, 385 F.2d 111, 115 (3rd Cir.1967); *In re Standard Metals Corp.*, 48 B.R. 778, 787 (D.Co.1985); *In re Robintech, Inc.*, 69 B.R. 663, 665 (Bankr.N.D.Tex.1987); *In re Lester Witte*

*& Co.*, 52 B.R. 436, 438 (Bankr.N.D.Ill. 1984). *Cf. Maressa v. A.H. Robins Co.*, 839 F.2d 220, 221 (4th Cir.1988) (creditor whose attorney had actual notice of Bar Date may file claim after passage of Bar Date only if requirements of Rule 60(b)(1) of Fed.Rules of Civil Procedures are met).

Since the Debtor and the Comptroller were in the midst of determining sales-use tax liability when the bankruptcy petition was filed, it cannot reasonably be argued by the Debtor that it did not know the Comptroller was at least a probable creditor; in fact, the Comptroller was listed as a creditor for fuel taxes. A failure to allow a known creditor to file a Proof of Claim, when such creditor had not received actual notice of the Bar Date, results in the Debtor "reaping the benefits of its negligence to the detriment of the [creditor]; a clearly inequitable result." *See In re Lester Witte & Co.*, 52 B.R. 436, 438 (N.D.Ill.1984) (citing *City of New York, supra*).

■ The Court is aware of the fact that the December 12, 1986, Bar Date was set upon a Motion to Expedite the Bar Date, and had this case proceeded within a normal time period the Comptroller's claims would have been timely. Since the claim filed by the Comptroller for sales-use taxes was received by the Court clerk a mere three days after the bar date, such a minor delay cannot be considered unreasonable. Nor would it be a burden to efficient court administration to allow the filing of such a claim. There is no contention that the Debtor will be unduly prejudiced by the allowance of this claim, and if such prejudice occurred it would be the result of the Debtor's own failure to perform and not the result of any action by the Comptroller. Therefore, the Comptroller should be allowed to file his first sales-use tax claim.[5]

The Trustee complains of the State's failure to request an extention of time in which to file its claim, or to request permis-

---

5. The Court does not require that this claim be accepted in toto, but merely that it be considered as timely filed and weighed on its merits. The Court recognizes that if the claim is approved, some problems might be created with respect to the formulation or administration of pending reorganization plans. However, such problems as may develop, if any, are not beyond the ken of the Court to resolve. *See In re Intaco Puerto Rico*, 494 F.2d 94, 100 (1st Cir. 1974).

sion for late filing, and contends it would be inequitable to allow such a late filed claim be considered. While the Court may consider or require such motions, to allow the filing of a Comptrollers' tax claim without a formal request or motion in this regard is not inequitable. *See Robintech, supra* at 665.

■ As to the Trustee's contention that the Comptroller had a duty to inquire about a Bar Date, as it had actual knowledge of the petition filing, it has been held that "known or identifiable creditors ... have a right to assume that they will receive all of the notices required by statute before their claims are forever barred. Such persons, even after receiving actual notice of the bankruptcy, have no duty to inquire about further court action." *In re Standard Metals Corp.*, 48 B.R. 778, 787 (D.C.Colo. 1985). *See also City of New York, supra; Reliable Electric Co. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir.1984).

Therefore, as a matter of law, the Comptroller was within its rights to expect proper notice of the Bar Date, since it was a known creditor and was not required to investigate the events surrounding the petition in bankruptcy of the Debtor. It is stipulated that the Comptroller was never mailed notice. As the Comptroller had no duty to inquire about a bar date, failure to so inquire does not bar the filing of its claim.

Courts have held that *unknown* creditors aware of a debtor's bankruptcy petition must make further inquiry to determine whether their claim might be affected. *See In re Gregory*, 705 F.2d 1118 (9th Cir.1983) (holder of large, unsecured claim with notice and knowledge is on inquiry notice, and ignores the proceedings at its own peril, and therefore may not set aside as non-dischargeable a debt discharged in a confirmed plan); *In re Larsen*, 80 B.R. 784 (Bankr.E.D.Va.1987) (unknown and unscheduled creditors with actual knowledge have a duty of further inquiry); *In re Siouxland Beef Processing Co.*, 55 B.R. 95, 100 (Bankr.N.D.Iowa 1985) (unknown, unsche-

duled and unlisted creditors with actual knowledge have a duty to inquire); *In re Seminole Backhoe Services, Inc.*, 33 B.R. 914, 917 (Bankr.N.D.Tex.1983) (creditor who was mailed notice of bar date and plays "brinksmanship" with the Court's Bar Dates will be denied relief, yet a tax lien may remain in place to secure the debt to the extent allowed by law). The instant action, however, involves a known creditor.

Given this resolution of the issue, the Court finds no need to address the Comptroller's alternative position that it was not required to file a proof of claim for sales-use taxes, since it is a secured creditor by virtue of the tax liens. Its sales-use claim filed December 15, 1986, shall be considered as timely filed. The Court expresses no opinion on the merits of this claim, nor on the timely filing or merits of the tax claim amendment filed August 24, 1987.

ORDER ACCORDINGLY.[6]

---

6. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.