**In re Gary Edward ROUNDS, Debtor.**

**Calvin Walker, Jr., Creditor–Petitioner,**

**v.**

**John T. Lee, Trustee, Jim Loftin and Anna Loftin, husband and wife, Respondents.**

Bankruptcy No. 96–80361.

United States Bankruptcy Court, W.D. Arkansas, Fayetteville Division.

Jan. 15, 1999.

William R. Gibson, Gibson & Hamm, Fayetteville, AR, for Jim and Anna Loftin.

Larry D. Douglas, Springdale, AR, for Calvin Walker, Jr.

Jill R. Jacoway, Jacoway Law Firm, Fayetteville, AR, for John T. Lee.

*MEMORANDUM OPINION*

ROBERT F. FUSSELL, Bankruptcy Judge.

## I. *INTRODUCTION*

Pending before the Court is Creditor–Petitioner Calvin Walker, Jr.'s ("Walker") April 28, 1998 Petition to set aside the Respondent Trustee's ("Trustee") sale to the Respondent Loftins ("Loftins") of 3.61 acres of land in Carroll County, Arkansas. For the reasons stated below, Walker's Petition is GRANTED. The sale, which this Court approved on December 22, 1997 and confirmed on January 22, 1998, is hereby SET ASIDE.

## II. *JURISDICTION*

This Court has jurisdiction over the pending matter pursuant to 28 U.S.C. § 1334. Further, the above is a core proceeding with-

in 28 U.S.C. § 157(b)(2)(N) (orders approving sale of property).[1]

The following Memorandum Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## III.  BACKGROUND FACTS

The debtor in the bankruptcy underlying this dispute is Gary Edward Rounds ("Rounds"), who once owned around 109 acres of land in Carroll County. Rounds testified[2] that he and the "creditor" at issue in this case, Calvin Walker, Jr., had been friends since the two were around thirteen years old. Since that time, the men saw each other regularly. Additionally, Mr. Walker allegedly helped Mr. Rounds, over the course of some years, on Mr. Rounds's farm and in his sanitation business.

This controversy is rooted in Mr. Rounds's purported oral conveyance, in 1991, of a 3.61–acre portion of the 109–acre tract to Mr. Walker ("Walker land"),[3] allegedly in return for Mr. Walker's labor. Mr. Rounds estimated that he owed Mr. Walker, for the work Walker had performed for him in the past, somewhere between $ 10,000.00 – 12,000.00. Mr. Walker testified that he considered that the land would constitute payment in full for this debt. Walker further testified that immediately after he and Rounds came to this oral understanding, Walker commenced clearing the 3.61 acres and cutting a road onto the property.

Gary Rounds first filed in Chapter 13 bankruptcy on March 25, 1994.[4] At that time, he did not list Mr. Walker as a creditor.[5]

Later that year, sometime in December 1994, both Walker and Rounds testified that Rounds approached Walker to reduce to writing their 1991 oral agreement concerning the Walker land.[6] Mr. Walker asserted that both he and Mr. Rounds together prepared what they styled as a "Temporary Ownership Deed" ("Deed"). Mr. Walker drew up the map contained in the "Deed"; Mrs. Jamie Walker (Mr. Walker's wife)[7] typed the text accompanying it; and the document was duly

1. Loftins' counsel has briefed arguments to the contrary (Response Brief of July 13, 1998 at 6–7). However, he orally conceded this Court's jurisdiction in a hearing held on August 18, 1998. Even if he had not, an alternative basis in which jurisdiction may be found is 11 U.S.C. § 105(a) (court has equity jurisdiction to interpret its own orders); *Miller v. Farmers Home Admin. (In re Miller)*, 16 F.3d 240, 244 (8th Cir.1994) (court can exercise equitable power to characterize and enter any orders as necessary; here, to treat creditor's motion to set aside confirmation as motion for new trial). In any event, the purpose of the Code's and the Rules' procedural notice requirements is, in part, to prevent disputes from falling into a "jurisdictional no-man's land." *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Industries, Inc.)*, 43 F.3d 714, 722–23(1st Cir.1994) (state law cause of action in products liability held to survive Chapter 11 due to failure of notice). Thus, for these reasons, the Court finds jurisdiction.

2. Mr. Rounds testified in hearings before this Court on August 18 and 27, 1998. Mr. Walker testified on September 7, 1998.

3. This is the parcel around which this ownership controversy has arisen. Designation of this parcel as the "Walker land" is intended to be for convenience only, to distinguish this tract from a neighboring parcel sold later to the Respondent Loftins. It is in no way intended to be a finding that Walker actually owns, or even has a claim on, this piece of land.

4. Case No. 94–80177. On December 17, 1995, that case was dismissed for failure to make payments. Mr. Rounds filed again in Chapter 13 on April 9, 1996 (case no. 96–80361, the current case). On June 13, 1996, he converted to Chapter 7.

5. Encumbrances on the land in question, existing at the time of the 1994 bankruptcy, included a mortgage on behalf of Marc May, which lien was originally filed in 1974, and one on behalf of Dynamic Enterprises, which was filed in 1983. The IRS lien in place at the time was recorded in November 1993. Thereafter, the debtor became subject to five more IRS liens that were recorded throughout 1996 and 1997, all of which tax liability eventually totaled in excess of $64,000.00.

6. Despite Walker's asserted close, long-time relationship with Rounds, and Mr. Rounds's having approached him in 1994 to write down their agreement regarding the land, Walker testified that he did not become aware of Mr. Rounds's bankruptcy status until around either the spring or fall of 1996.

7. Jamie Walker testified at the August 27, 1998 hearing.

witnessed, notarized, and dated December 14, 1994.

The text of the "Deed" is as follows:

## TEMPORARY OWNERSHIP DEED

Be it known that Calvin Walker, Jr. has worked for me on my farm between Berryville and Huntsville on Highways 412 and 21 and helped me on occasion in my sanitation business. I give him the fenced-in acreage as shown by the strip map below as pay [sic] for the described work. Until my farm is paid off, this temporary ownership deed will be his promissory note showing this acreage on Highways 412 and 21 in the Northeast corner of the 80 acres of my farm adjoining the Christmas Tree Farm is paid in full. When my farm is paid off, I will issue him a proper deed— paid in full. Fenced-in area on map is acreage. Fence not fully complete as of this date, but will be.—Fenced-in area is 435 ft. on North side; 455 ft. on East side; 375 ft. on South side; and 420 ft. on West side.

/s/

Gary E. Rounds

The parties did not record their "Deed."[8] Nevertheless, after signing it, Mr. Walker testified that he obtained a survey, for which Gary Rounds paid, and Walker completed the fence referred to in the "Deed."

From the time of the 1991 oral agreement until March 1998, when Walker testified that he first learned of the subsequent sale of the same Walker land to the Respondent Loftins, Mr. Walker and his wife testified that Walker built a stone entry, leading from the road he had cut onto the property, and installed a metal gate in it emblazoned with a "W"; put in a pond, flower beds, and an outhouse; and very nearly completed construction of a substantial cabin.

As noted, in December of 1995, Rounds's first Chapter 13 case was dismissed for non-

payment. He refiled, again in Chapter 13, in April of 1996. In June of that year, his case was converted to a Chapter 7 and John Terry Lee, one of the respondents in the instant matter, was appointed Chapter 7 Trustee.

Just over a week after the Chapter 7 conversion, Mr. Rounds filed an amendment to schedules on which Calvin Walker, Jr.'s name and address appear in the bankruptcy record for the first time. That document is styled as "Second Amendment to Petition, Schedules and Statement of Financial Affairs," filed with this Court on June 25, 1996. Included in the first item in that document is debtor's amendment to Schedule G, "to add the following executory contracts." Listed in that grouping is the Rounds–Walker agreement concerning the Walker land now at issue. The amending document characterizes Mr. Walker's interest as lodged in the "Temporary Ownership Deed," a copy of which was appended and incorporated by reference. The certificate of service, accompanying the amending document and dated the same day, includes both the Trustee, John T. Lee, and his attorney Jill Jacoway.[9]

Mr. Lee's administration of the estate proceeded. On August 13, 1996, he applied for approval of the sale of forty acres of land ("Loftin land") adjacent to the contested 3.61 Walker acres, for a purchase price of $ 30,-000.00, to the Respondents Loftins.

At one time, the Loftins, Rounds, and Walker appear to have been each others' friends. Walker and Rounds both so testified. Rounds testified that he also owed Mr. Loftin money. Thus, Mr. Rounds testified, to satisfy that debt, Rounds permitted the Loftins to run cattle on the forty acres neighboring the contested Walker tract. Both Jim and Anna Loftin testified at the September 7th hearing that they had spoken to Calvin Walker, on the land, numerous times. The Loftins, thus, appear to have been closely familiar with the land at issue and they also knew of Mr. Walker's presence on it.[10]

---

8. Accordingly, when the Trustee later caused a title search to be made, Mr. Walker's alleged interest in the land did not appear as a matter of record.

9. Ms. Jacoway has represented both Trustee Lee and Rounds's mortgagee Marc May.

10. There was even testimony that they were aware that Walker thought he had a claim on "his" land. Both the Loftins testified to having heard Walker mention a "piece of paper" that he believed gave him a claim on the land. (Loftins' testimony at September 7 hearing.)

The Trustee's application of sale regarding the Loftin land represented that he had provided notice of the sale to all creditors and parties in interest, by first-class mail.[11] The certificate of service in the Court file further specifies that Trustee Lee mailed this notice to the creditors listed on the mailing matrix. However, since Calvin Walker, Jr.'s name and address did not appear on this matrix,[12] needless to say, he did not receive this notice or any of the other like ones.

Trustee Lee has conceded in a brief that Mr. Walker was not notified, neither of the sale of the Loftin land nor of the subsequent sale of the challenged 3.61–acre Walker tract, which "omission was an oversight. . . ." (August 25, 1998 Br. at 1). The Trustee further testified at the September 7th hearing that ordinarily a creditor such as Mr. Walker should have been added to his mailing matrix. The Trustee did not know why this had not occurred, but he suspected a clerical oversight.

The sale of the forty acres to the Loftins proceeded. Trustee Lee applied for an order confirming sale on October 31, 1996; amended the application on November 18, 1996; and obtained the confirming order from this Court on November 20, 1996.

A similar sequence of events occurred regarding the second sale of the remaining and adjacent Walker land here challenged. The Trustee applied for approval of sale of this land to the Loftins on November 25, 1997, which application made the same assertions as to similarly defective notice as did the prior August 13, 1996 application for the Loftin land. The purchase price proposed by the Loftins for the Walker tract, and later obtained from them, was $1,500.00. The Trustee represented in his application that this land was unimproved [13] and that the purchase price was reasonable—in fact, that it was worth more to the Loftins than anyone else, because it "square[d] off" their prior-purchased forty-acre plot. The Order of Approval of this sale was dated December 22, 1997, and the Order Confirming Sale was dated January 22, 1998.

Mr. Walker testified that the first he knew of the sale of the 3.61 acres to the Loftins was through a face-to-face conversation with Jim Loftin on the land, in March 1998. In that conversation, according to Mr. Walker, Mr. Loftin introduced himself as Mr. Walker's "new landlord."

Mr. Walker petitioned this Court to set aside the sale on April 28, 1998.

## IV. SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

Petitioner Walker asserts that lack of notice entitles him to the relief he seeks. In support of this assertion, he argues that his Deed conveyed status on him as a "known party in interest" sufficient to trigger the requirements, contained in the statute and the bankruptcy rules, that the Trustee notify him before selling the Walker land. 11 U.S.C. § 363; F.R.Bankr.P.2002. He further argues that, because he did not receive this notice, the sale violated his due process rights and must, thus, be set aside. The Trustee, for his part, has conceded the notice

---

**11.** This is the § 363(b)(1) notice, which included statement of the 20-day objection period as required in Bankr.R.2000(a)(2), (c)(1).

**12.** Neither Mr. Walker's address was included on the matrix, nor that of the other party contained in the Second Amendment: the Chambers Development Co., which held a confidentiality agreement pertaining to a garbage route sold.

**13.** The assertions and testimony conflict as to the extent of the improvements that existed on the Walker land at the time of sale in November 1997. The Trustee accuses the Loftins of "overly-shrewd" dealings with him and asserts that they misled him into thinking the property was unimproved. (Trustee's November 24 Brief at 4–5.) In contrast to this accusation, Walker testified that he had begun improving the property as early as 1991; by 1998, he claimed to have cut a road and built an entry onto the property; as well as installed a pond, flowerbeds, and an almost-completed and substantial cabin. Further, as noted in more detail infra at n. 24, Anna Loftin substantiated Walker's testimony in some respects. However, the Court need not resolve this controversy at this juncture, because the sole issue presently and properly before it may be resolved on the failure-of-notice determination. As discussed in more detail below, other issues as to the nature and extent of Walker's claim, including the legal or equitable value of the asserted improvements, are more properly raised in the adversary proceeding that should follow this decision.

issue.[14] The Loftins in their turn assert that Walker should be barred from asserting his no-notice objection to the sale now, when he had actual knowledge of the bankruptcy, and maybe even the sale itself, but did nothing to assert his claim at time of the sale.[15]

■ This Court agrees with Walker and the Trustee and finds that the Trustee's having failed to provide the statutorily required notice of the proposed sale of the 3.61 acres to the Loftins renders the sale procedurally defective and violative of Mr. Walker's right to due process of law. Based on the analysis immediately following, the Court finds that Calvin Walker, Jr., was a known party in interest sufficient to trigger the statutory notice requirements, which were that he receive specific notice of the objectionable event and the time within which to object. The Court further finds that the burden was on the Trustee to provide this notice and that the Trustee failed to sustain his burden. The Court lastly finds that on the facts of this case, the appropriate remedy is to set the sale aside.

The applicable provision of the Bankruptcy Code pertaining to use, sale, or lease of property permits the trustee to sell property of the debtor's estate, but only after notice and a hearing. Section 363(b)(1) states: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Bankruptcy Rules specify that parties in interest to a debtor's estate be given twenty days' notice by mail of a proposed sale. Fed.R.Bankr.P. 2002(a)(2). The Advisory Committee Note states: "The notice of a proposed sale affords creditors an opportunity to object to the sale and raise a dispute for the court's attention.... Once an objection is raised, only the court may pass on it." Bankr.R.2002 advisory committee's note (1983). This notice must include time and place of sale, terms and conditions, and the time fixed to object. Bankr.R.2002(c)(1).

■ The notice provisions are the cornerstone of bankruptcy procedure; notice to "parties in interest" is indispensable. The term "parties in interest" encompasses not only entities holding "claims" against the debtor, but also *any* entity whose pecuniary interests *might* be directly and adversely affected by the proposed action. This construction of "parties in interest" is consistent with the broad meaning Congress intended to convey on the words "claim," "debt," and "property of the estate." *Cf.* 11 U.S.C. §§ 101(5)(A) ("claim" means right to payment, whether or not ... reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured [etc.] ); § 101(12) ("debt" means liability on a claim); § 541(a)(1) ("property of estate" includes *all* legal *or equitable* interests of the debtor) (emphasis added).

■ Thus, for example, even notwithstanding the Code's concern for finality in bankruptcy sales, it "will not ... protect a party buying from the trustee in a sale free and clear of liens[,] where no notice [was] given to the lienholder[;][s]uch a purchaser will be held to have purchased subject to the lien." The burden to furnish such notice is on the trustee. *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Industries, Inc.)*, 43 F.3d 714, 720–21 (1st Cir.1994) (state-law products-liability action held to survive Chapter 11 due to failure of notice); *MRR Traders, Inc. v. Cave Atlantique Inc.*, 788 F.2d 816 (1st Cir.1986) (notice of proposed sale of liquor license, sent to debtor's landlord rather than landlord's attorney, failed to satisfy notice requirements and justified setting aside sale); *Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.)*, 73 B.R. 616 (Bankr.E.D.Pa.1987) (notice sent to lienholder's attorney, rather than lienholder, held insufficient and grounds to set aside sale); *cf. In re CRC Wireline, Inc. ("CRC")*, 103 B.R. 804, 806 (Bankr.N.D.Tex.1989) (court rejected trustee's argument that em-

---

**14.** In his August 25, 1998 brief, at 1, the Trustee acknowledges and apologizes that he did not serve notice on Walker. In his November 24th post-trial brief, at 6, the Trustee proposes that the Deed be deemed a mortgage and, on the strength of it, that the sale to the Loftins should

be set aside, for failure to give notice to the mortgagee.

**15.** The Court explains why it rejects this contention *infra* at 764–765.

phasis on notice requirement would interfere with certainty and finality; court permitted otherwise-late claim due to notice failure); *see also infra,* n. 20. *See generally* Philip A. Schovanec, *Bankruptcy: The Sale of Property Under Section 363: The Validity of Sales Conducted Without Proper Notice,* 46 Okla. L.Rev. 489, 517 & text accompanying n. 175 (1993) ("Schovanec").

The Court finds that Mr. Walker was a "party in interest" because he *might* have had a cognizable pecuniary interest in land that he had received, in satisfaction of what he and Mr. Rounds thought was a legitimately incurred debt.[16]

Various explanations may be found for why Mr. Walker was omitted from various mailing matrixes, but, under the circumstances of the case at hand, the Court re-emphasizes that the ultimate burden of ensuring proper notice must rest on the Trustee. *Western Auto Supply,* 43 F.3d at 721. The circumstances here are that, on June 25, 1996, the debtor's attorney properly served this Trustee, *and* his attorney, with a copy of the amended schedule that contained Walker's name, his address, and an assertion that the nature of his alleged claim was in the form of an executory contract. In addition, affixed to this amendment was a copy of the written instrument itself *with* a map of the particular land in which Mr. Walker claimed an interest.[17]

Thus, from the mere title of the amending document only, the Trustee should have taken notice that Walker claimed an interest under what Walker characterized, in filings duly served on the Trustee, as either an executory contract or a "Temporary Deed." Further, from the contents of the document

attached to the amendment to schedules—both this document's language attempting to describe the claimed property, as well as the hand-drawn map purporting to depict it—the Trustee should have taken notice that Walker sought to attach his claim to the very "Walker" land (the 3.61 acres) that the Trustee eventually sold to the Loftins, instead of and without notice to Walker. Under these circumstances, the burden rested on the Trustee to furnish notice of a proposed action directly seeking to alienate that very same land. There can be no burden on Walker to inquire further about such proposed court action. *CRC,* 103 B.R. at 808.

The Trustee has conceded[18] that Mr. Walker was inadvertently omitted from the mailing matrix when he should have been on it, as a party whose interest may have been of *some* kind, no matter whether legal or equitable. The ultimate merit of Walker's claim is immaterial to that point. He should have had notice.[19]

The Loftins, in their December 28, 1998 Post-trial Brief at 18, cite cases for the contrary proposition that failure of notice should not entitle Walker to set aside the sale now, because he was aware of the bankruptcy, and even may have known specifically about the sale, yet he did nothing to assert his right to the property at the appropriate time. First, however, as counsel also forthrightly notes at that same point in his brief, the cited cases are applicable as to *filing proofs of claims.* The Court finds that they are not applicable here, however, where notice as to the *sale of property* is governed by additional statutory and rules requirements specifically as to notice required in that circumstance.

---

**16.** Thus, the Loftins' argument in their December 28th post-trial brief at 8–17, that Walker's status as a "creditor" depends on the validity and enforceability of the "Deed," has no merit.

**17.** Thus, the Loftins' argument in their December 28th brief at 17, that the amended schedule was too vague to alert the Trustee that Walker might have been a potential creditor who deserved notice of the sale, also has no merit.

**18.** Trustee's August 25, 1998 Brief at 1; testimony at September 7th, 1998 hearing; November 24th post-trial brief, at 6.

**19.** Since Mr. Walker never received notice of any kind, the Loftins' arguments on timeliness of appeal are inapposite. (Loftins' Brief of July 13, 1998, at 4–6.) The Court fails to grasp how a person such as Mr. Walker should be required to appeal an order approving a sale within any given time, when the person never was notified of the proposed sale and, therefore, had no reason to know that anything objectionable had occurred in the first instance.

Second, even the rule of law the Loftins cite as to filing proofs of claims is not as absolute as counsel would have it. *See* 11 U.S.C. § 1141(d)(1) (if Chapter 11 creditor not listed on schedule and, therefore, omitted from requisite notices, then creditor's claim not discharged).[20]

■ Thus, the Eighth Circuit has held in a recent case that "adequate notice" and "opportunity to participate" includes providing interested, "known" parties not only with *generalized* notice of the event in question, but also the *specifics* of it, including the dates within which objections must be lodged. "The constitutional component of notice is based upon a recognition that creditors have a right to adequate notice and the opportunity to participate in a meaningful way in the course of bankruptcy proceedings." *IRS v. Hairopoulos (In re Hairopoulos )*, 118 F.3d 1240, 1244 (8th Cir.1997). Thus, in *Hairopoulos,* the Court of Appeals for the Eighth Circuit held that the IRS could pursue collection efforts against a discharged Chapter 13 debtor, because IRS had not been properly notified of the debtor's conversion from Chapter 7 to 13. The court rejected debtor's contention that notice was served on IRS by way of a post-conversion attorney fee application, or a pre-conversion no-asset notice. The court emphasized that "the focus of the due process inquiry is on 'the duty of the ... bankruptcy court to *give notice of the relevant dates.*'" *Id.* at 1245, *quoting In re Interstate Cigar Co.,* 150 B.R. 305, 309 (Bankr.E.D.N.Y.1993) (emphasis added). *See also Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (inadequate notice is grounds for allowance of late-filed claims). The rule in § 1141 obtains even if the unscheduled Chapter 11 creditor were otherwise aware of the bankruptcy. *Wallach v. Frink America, Inc. (In re Nuttall Equip-*

*ment Co.*), 188 B.R. 732, 735 n. 1, (Bankr. W.D.N.Y.1995); *CRC,* 103 B.R. 804, 808 (otherwise-late claim permitted despite creditor's knowing of bankruptcy *as well as* wide publication of notice in print media; "[s]uch persons, even after receiving actual notice of the bankruptcy, have no duty to inquire about further court action."). These notice rules— as is also true for those that obtain in the case of sale of property—largely flow from due process considerations. *Wallach,* 188 B.R. at 735 n. 1. Thus, the mere generalized knowledge that Walker may have had as to the existence of the Rounds bankruptcy cannot serve to bar him from asserting, and this Court from so finding, that his due process rights were violated here.

■ The case law presents this Court with some options as to remedy. On the facts of this case, setting aside the sale is the appropriate one.

Failure to give adequate notice is by far the most frequent mistake or infirmity held to warrant vacating a confirmed sale. Schovanec, 46 Okla.L.Rev. at 517 & text accompanying n. 175. The most common remedy, where adequate notice of sale has not been given, is to set the sale aside or to treat it as voidable, typically at the option of the person who failed to receive notice. *Id.; see, e.g., M.R.R. Traders v. Cave Atlantique, Inc.,* 788 F.2d 816 (1st Cir.1986) (notice of proposed sale of liquor license, sent to debtor's landlord rather than landlord's attorney, failed to satisfy notice requirements and justified setting aside sale); *Esposito v. Title Ins. Co. of Pa. (In re Fernwood Markets),* 73 B.R. 616 (Bankr.E.D.Pa.1987) (notice sent to lienholder's attorney, rather than lienholder, held insufficient and grounds to set aside sale). This more conventional approach views a sale conducted without proper notice as a taking of property that violates due process. Strict adherence to the notice requirements is, therefore, required.[21] Schovanec, 46 Okla. L.Rev. at 517, text accompanying n. 176.

---

**20.** For a thoughtful analysis of distinctions that must be made in this context, see *In re Eagle–Picher Industries, Inc.,* 215 B.R. 983 (Bankr. S.D.Ohio 1997) ("known" Chapter 11 creditors—those "reasonably" known to debtor—must receive actual and specific notice; otherwise, mere knowledge of pendency of bankruptcy, and notice by publication, might be sufficient *if*

claimant's predecessor-in-interest had continued business dealings with debtor *and if* claim in question arose *post*petition *and if* claimant had actual notice of *bar date for claims;* on those facts, publication notice of date of *confirmation hearing* was sufficient.).

**21.** Thus, a further finding on the alternative ground of whether the sale was unconscionable

Some courts have taken a more lenient, flexible approach, which molds the remedy to the facts of the particular case. Schovanec, 46 Okla.L.Rev. at 520, 521; *e.g., In re Cavalieri,* 142 B.R. 710 (Bankr.E.D.Pa.1992) (subsequent dispute over automobile caused by clerical error in mistakenly releasing security interest). However, the facts of the case at bar do not invite this Court to decide whether the more flexible approach is necessary. For example, this case does not involve avoiding a slightly imperfect sale simply because of an insignificant, technical error in its consummation; Schovanec, 46 Okla.L.Rev. at 524. Here, the error was significant: There was no notice whatsoever. Similarly, there is no question in the case at bar whether an "overly rigid" approach ending in avoidance would work a disadvantage on the estate, *id.* at 520; here, on the contrary, the estate would be deprived of a valuable asset if the sale were allowed to stand.

Moreover, considerable evidence exists, even on the partial record made so far in this case, to establish that this is not a case in which an alternate remedy should be crafted to save the sale, in order to protect an innocent third-party purchaser in good faith. Rather, as has been noted, the evidence shows that the Loftins knew that the 3.61 acres had improvements on it at the time of the sale to them. (*See supra,* note 13.) The evidence further shows that the Loftins knew that Walker thought he had some kind of interest in the 3.61 acres. (*See supra,* text accompanying note 10.) Regardless of whether their conduct actually amounted to the "overly-shrewd" "picking of the Trustee's pocket," of which the Trustee accuses them in his November 24th brief at 5, the fact remains that the Trustee has testified that he would not have sold the Walker land to them

at the $1,500.00 purchase price if he had known about the improvements.[22]

Therefore, there is nothing to prevent this Court from setting aside the sale, for failure of notice alone, and the Court will accordingly do so.

The parties have raised numerous other issues over and above the notice issue. However, the Court has determined that these are not properly raised in the present context, when the parties have argued only by petition and response, and hearings on the same. Rather, now that the Court has determined that the sale must be set aside, the appropriate procedure is for the Trustee, or any other party in interest, to file an adversary proceeding under Bankruptcy Rule 7001. This Rule provides, in relevant part: "An adversary proceeding.... is a proceeding ... to determine the validity, priority, or extent of a lien or other interest in property...." Fed.R.Bankr.P. 7001(2). This is the appropriate procedure because, to date, the parties may have briefed some of the numerous issues raised, but they have not yet had the opportunity to conduct discovery, or to organize or present evidence properly and fully.

The issues that are to be determined subsequent to the notice issue—and there may be more than these—include at least: (1) whether Mr. Rounds improperly conveyed the written interest in the 3.61 acres to Mr. Walker several months postpetition, in late 1994, without seeking leave of, or informing, this Court (Loftins' December 28, 1998 Brief at 17); (2) whether this writing was ambiguous; (3) whether it was in the nature of a contract, executory or otherwise; a note; or a mortgage[23] (Walker's November 5, 1998 Brief at 20–24; Trustee's November 24 Brief at 2–4; Loftins' December 28 Brief at 10–15);

(Walker's August 26, 1998 Brief at 34–36), is unnecessary. Rather, Walker may raise a claim of unjust enrichment, if appropriate, against the debtor's estate in subsequent proceedings.

**22.** The Court suspects that if the Loftins had taken care to inform the Trustee of Walker's presence on the 3.61 acres and the improvements he had put there, matters would not have come to the present pass. That they have is most regrettable for all parties here concerned, not least of whom are the Loftins, who will have to

continue to pay for litigation over a matter that could have been resolved by forthright dealings at the appropriate time. In other words, it appears to the Court that, in all likelihood, the Loftins brought this litigation on themselves.

**23.** Further, the Trustee should re-raise in the adversary proceeding his argument that the Walker claim—if it was a mortgage—should be avoided (Trustee's November 24, 1998 Brief at 6).

(4) whether the writing can have legal force or effect, in light of the contingent nature of the donative language (Walker to receive land when Rounds paid off his debts in full); (5) whether Mr. Rounds could ever pay his debts in full, given the significant encumbrances on the land (Loftins' December 28 Brief at 16); (6) whether Rounds's and Walker's failure to record this document, as the law ordinarily requires, would be fatal to Walker's claim; and (7) failing a legal claim, whether Mr. Walker might have an equitable claim on the estate and, if so, how much, due to the improvements he allegedly made.

Again, however, an adversary proceeding and full discovery is the appropriate procedure to follow, before this Court may rule on these and any other matters. Moreover, a full evidentiary record is necessary finally to determine the extent and value of Walker's claim, if any, on the bankruptcy estate.

In addition, since the sale to the Loftins was in the amount of $1,500.00, and since the Trustee has conceded at the September 7, 1998 hearing that he would not have agreed to that purchase price if he had known that there were improvements on it,[24] the amount the Trustee receives on resale of the property, at a price that will more appropriately reflect the value of the real estate *plus* improvements, will have bearing on the extent of all relevant claims on the property.

Thus, for the above-stated reasons, the sale that this Court approved on December 22, 1997 and confirmed on January 22, 1998 is hereby SET ASIDE.[25]

IT IS SO ORDERED.

---

**24.** Anna Loftin also conceded in her testimony at the same September 7 hearing that, as of April 1997, the cabin, including a walkway and walls but not windows, had been built. (*See* Trustee's November 24, 1998 Brief at 5 n. 4.) She further testified that the entrance to the property had been present as early as 1995. Thus, since the Trustee applied for approval of sale of the 3.61 acres in November 1997, and obtained confirmation of it in January 1998, and because Anna Loftin is especially credible here because her

testimony is adverse to her own interests, the Court finds that the purchase price should have, but did not, reflect the existence of these improvements to the land. The Court reserves any specific findings as to what that value might have been pending further evidentiary development.

**25.** This is the relief that Petitioner Walker has requested. There is, thus, no need to offer him the option of treating the sale as voidable. *See supra*, at 765–766.